UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

GWENDOLYN SANDERS,

                 Plaintiff,

v.                                               Case No.  5:06-cv-328-Oc-10GRJ

MICHAEL J. ASTRUE,[1]
COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.

_____/

## REPORT AND RECOMMENDATION[2]

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for a period of disability and disability insurance benefits.  (Doc. 1.)  The Commissioner has answered (Doc. 8) and both parties have filed briefs outlining their respective positions.  (Docs. 11 & 14.)  For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED.**

## I.  PROCEDURAL HISTORY

On April 28, 2003, Plaintiff filed an application for a period of disability and disability insurance benefits claiming a disability onset date of November 11, 2002 (58-60.)  Plaintiff's application was denied initially (R. 39-40), and upon reconsideration. (R.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

36-37.)  Thereafter, Plaintiff timely pursued her administrative remedies available before

the Commissioner, and requested a hearing before an Administrative Law Judge

("ALJ"). The ALJ conducted an administrative hearing on October 14, 2005 (R. 385-420)

and issued a decision unfavorable to Plaintiff on January 19, 2006. (R.13-24.)  The

Appeals Council denied Plaintiff's request for review on July 20, 2006 (R. 5-7.)  On

September 13, 2006, Plaintiff filed the instant appeal to this Court. (Doc. 1.)

## II. <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by substantial

evidence.[3] Substantial evidence is more than a scintilla, i.e., the evidence must do

more than merely create a suspicion of the existence of a fact, and must include such

relevant evidence as a reasonable person would accept as adequate to support the

conclusion.[4]

Where the Commissioner's decision is supported by substantial evidence, the

district court will affirm, even if the reviewer would have reached a contrary result as

finder of fact, and even if the reviewer finds that the evidence preponderates against the

Commissioner's decision.[5] The district court must view the evidence as a whole, taking

into account evidence favorable as well as unfavorable to the decision.[6] However, the

---

[3] <u>See</u> 42 U.S.C. § 405(g).

[4] <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[5] <u>Edwards</u>, 937 F.2d at 584 n.3; <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991).

[6] <u>Foote</u>, 67 F.3d at 1560; *accord,* <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); <u>Parker v. Bowen</u>, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from
(continued...)

district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[7]   The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[8]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[9]

The ALJ must follow five steps in evaluating a claim of disability.[10]  First, if a claimant is working at a substantial gainful activity, she is not disabled.[11] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[12] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is

---

[6](...continued)
evidence on which the Commissioner relied).

[7] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[8] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[9] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[10] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[11] 20 C.F.R. § 404.1520(b).

[12] 20 C.F.R. § 404.1520(c).

disabled.[13] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[14] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[15]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[16] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[17] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[18]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of

---

[13] 20 C.F.R. § 404.1520(d).

[14] 20 C.F.R. § 404.1520(e).

[15] 20 C.F.R. § 404.1520(f).

[16] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[17] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (internal citations omitted).

[18] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

exertion.[19] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[20]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[21] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[22] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[23]

### III. <u>SUMMARY OF THE EVIDENCE</u>

Plaintiff was born on March 7, 1952 and was fifty-three (53) years old at the time of the decision. (R. 389.) Plaintiff has a sixth grade education (R. 391) and has past relevant work history as a telephone solicitor and secretary. (R. 392.) Plaintiff contends that she has been unable to work since November 11, 2002, due to "depression, chemical imbalance, panic, [and] anxiety." (R. 64.)

---

[19] <u>Phillips v. Barnhart</u>, 357 F. 3d 1232, 1243 (11th Cir. 2004); <u>Wolfe v. Chater</u>, 86 F.3d 1072, 1077 (11th Cir. 1996); <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999); <u>Walker</u> at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[20] <u>Walker</u> at 1003.

[21] <u>Wolfe</u> at 1077-78.

[22] <u>See</u> <u>id</u>.

[23] <u>See</u> <u>Doughty</u> at 1278 n.2.

Plaintiff suffers from an anxiety disorder, depression, mild degenerative changes of the thoracic spine, a history of mitral valve prolapse and mild chest pain. (R. 18.) The ALJ determined that Plaintiff was capable of performing her past relevant work as a telephone operator as it is performed in the general economy. (R. 23.)

There are no medical notes from treating physicians in the record. Plaintiff was apparently psychiatrically hospitalized for three weeks at Charter Springs in the early 1980's for an overdose of medication and has received out-patient mental health treatment off and on since the 1970's. Her last reported mental health treatment was with Henrietta Curry and Dr. William Corwin in 1995. (R. 185.)

Plaintiff was evaluated by Linda S. Bojarski, Psy.D. on August 12, 2003, at the request of the Division of Disability Determinations for a mental status examination. (R. 185-188.) Dr. Bojarski noted that "collateral information included medical records from an unknown source indicating diagnosis of anxiety and depression." Plaintiff reported to Dr. Bojarski that she left her last job because she kept "breaking down" and that she missed a great deal of work. Plaintiff reported taking Wellbutrin, Alprazolam, and Estratest at the time of the examination. Plaintiff reported feelings of anxiety and an inability to sleep, to point that she has little interest in keeping her house clean or even bathing or getting dressed.

Plaintiff stated that she had feelings of anxiety if she had to leave her house or if someone is visiting her home, and that while she gets along well with people, she cannot handle conflict and everyone makes her nervous, including her sons. Plaintiff reported that she had a lot of friends, but that she never sees them because she will not go out of the house, except that she attends church every other Sunday. Plaintiff stated

6

that she was able to perform all activities of daily living, including cooking, laundry, and occasional shopping, but performs no housework or yard work.

Dr. Bojarski found that Plaintiff was "oriented in all three spheres," had "mild to moderate deficits in immediate memory and moderate deficits in concentration. Dr. Bojarski noted that Plaintiff's last out-patient mental health treatment was in 1995. Dr. Bojarski found that Plaintiff suffers from dysthymia, panic disorder with agoraphobia, and nicotine dependence. Additionally, Dr. Bojarski found that Plaintiff was cognitively capable of independent management of any funds to which she is entitled.

Plaintiff was evaluated by Paula S. Lovett, Ph.D. on August 10, 2005 for a Mental Status Assessment Report. (R. 372-374.) Plaintiff complained to Dr. Lovett of anxiety and depression, and that she used to be organized but now felt like her life was a "mess."  Plaintiff reported that before she stopped working her hygiene had declined and she was withdrawn from friends at work who tried to help her. Plaintiff stated that she does not like to leave her house or answer the telephone and that she has auditory hallucinations including voices and loud music. However, Dr. Lovett noted that Plaintiff was "alert and reality based" and her thought processes were "logical and coherent."

Dr. Lovett administered to Plaintiff the MMPI-2 and the BDI-II, the results of which indicated that Plaintiff is alert and reality based, she has no deficits in orientation, registration, attention or language. Plaintiff did demonstrate deficits in recall. Dr. Lovett found that the results of the MMPI-2 suggested a valid profile. Plaintiff had "clinically significant high scores of the depression and anxiety scales" which indicated "an individual experiencing depression and anxiety." The results also indicated personality disorder. The BDI results indicated moderate to severe symptoms of depression. Dr.

7

Lovett diagnosed Plaintiff with Mood Disorder, Major Depression, Severe with Psychotic Episodes (Auditory Hallucinations). Dr. Lovett stated that Plaintiff had a GAF score of 41, indicating severe functional impairment in occupation, psychological and physical functioning. Dr. Lovett recommended a psychiatric referral for psychotropic medication management in conjunction with psychotherapy.

State agency physician, Susan Conley, Ph.D., completed a Psychiatric Review Technique form regarding Plaintiff on September 4, 2003. (R. 197-210.) Dr. Conley found that Plaintiff suffers from dysthmia and panic disorder with agoraphobia. Dr. Conley found that Plaintiff is mildly restricted in her activities of daily living; has moderate difficulties in maintaining social functioning; moderate difficulties maintaining concentration, persistence, or pace; and no episodes of decompensation. Dr. Conley noted that while Plaintiff claims she cannot leave the house, Plaintiff also stated that she attends church and shops.

State agency physician, Mark A. Williams, Ph.D., completed a Psychiatric Review Technique form regarding Plaintiff on November 3, 2003. (R. 219-236.) Dr. Williams evaluation was identical to Dr. Conley's evaluation of Plaintiff. In addition, Dr. Conley stated that Plaintiff's "alleged impairments exceed that which can be corroborated by signs and findings. Despite her alleged lifelong struggle with depression/anxiety, she has had stable work periods. There has been no intensive therapy sought. There is probably alcohol abuse overlay. In total, evidence does not adequately establish listing level impairment." (R. 231.) Additionally, Dr. Williams found that Plaintiff is moderately limited in her ability to understand, remember and carry out detailed instructions, to interact appropriately with the public, to accept instructions and

8

respond appropriately to criticism from her supervisor, and in her ability to set realistic goals or make plans independently of others. (R. 233-234.)

The ALJ found that Plaintiff could perform her prior work as a telephone solicitor and in this regard called a VE to testify regarding the functional limitations of a telephone solicitor. The VE testified that Plaintiff could return to her prior work as a telephone solicitor (R. 412-414), a job the VE classified as a sedentary or light position that is low stress and simple. (R. 412-413.) The VE further testified that the job of telephone solicitor was "pretty isolated" and therefore the Plaintiff would have "very little contact with coworkers." (R. 414.) Accordingly, the ALJ determined that Plaintiff was not disabled.

## IV. DISCUSSION

Plaintiff's sole argument is that the ALJ improperly rejected the VE's response to a hypothetical question by Plaintiff's counsel, which assumed that Plaintiff suffered from extreme fatigue and anxiety.[24] In response to this hypothetical, the VE testified that Plaintiff would be unable to perform her past work or pursue other types of employment.[25] Plaintiff argues that the ALJ "failed to propound a hypothetical question that completely addressed Sander's limitations" and therefore the VE's responses to the ALJ are "not substantial evidence."[26]

As part of the ALJ's evaluation at step four of the sequential evaluation whether Plaintiff could perform her past relevant work as a telephone solicitor, the ALJ obtained

---

[24] R. 415-416.

[25] Id.

[26] Doc. 11.

testimony from a VE. In order for the testimony of a VE to constitute "substantial evidence," the ALJ "must pose a hypothetical question which comprises all of the claimant's impairments."[27]  However, an ALJ is "not required to include findings in the hypothetical that the ALJ has properly rejected as unsupported."[28]

The ALJ found that Plaintiff's statements regarding the effect of her impairments were not credible. Specifically, the ALJ noted that despite her complaints, Plaintiff "was able to and did work consistently through November 2002." The ALJ properly noted that Plaintiff has never been hospitalized due to mental ailments since the early 1980's, and she "takes care of a home with her husband, is independent in her activities of daily living by her own accounts, and participates in activities such as shopping and church."[29]

The ALJ found that Plaintiff's medically determinable impairments could not reasonably be expected to produce the intensity, duration and limiting effects of these symptoms as claimed by Plaintiff, and therefore found her allegations of disability not entirely credible. The ALJ stated that Plaintiff's "non-aggressive treatment history and her activities of daily living are inconsistent with her allegations regarding the severity of her limitations."[30]

Plaintiff further contends that the ALJ failed to propound a hypothetical question that addressed Plaintiff's testimony that she needed to be isolated due to her panic

---

[27] Jones v. Commissioner of Social Security, 181 Fed.Appx.767, 771 (11th Cir. 2006).

[28] Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004).

[29] R. 23.

[30] Id.

attacks, anxiety and depression. However, the VE testified that the occupation of telephone solicitor is "pretty isolated."[31]  In addition, the VE took into consideration that Plaintiff's work must be low stress, simple, and unskilled with 1-2-3 step instructions; that Plaintiff required no direct contact with the public; and that Plaintiff has depression which affects her ability to concentrate on complex or detailed tasks.[32] The VE also testified that Plaintiff's job as a telephone solicitor has "very little contact with coworkers."[33]

The ALJ thoroughly discussed the opinions of Drs. Bojarski, Williams, Conley and Lovett. Dr. Bojarksi, as the examining psychologist, reported that Plaintiff had only mild to moderate deficits in the areas of memory, concentration, and abstract thinking. While Dr. Bojarski noted that Plaintiff's activities "appear restricted" and that Plaintiff is "isolating herself," these statements were based upon Plaintiff's subjective complaints and were not part of Dr. Bojarski's findings.

Moreover, the opinions of Drs. Conley and Williams were consistent with the conclusions of Dr. Bojarksi, with regard to the finding that Plaintiff had mild to moderate limitations in her ability to maintain concentration and work in proximity of others without being distracted by them. Dr. Williams ultimately concluded that Plaintiff has the ability to work with the public and coworkers in a casual setting.[34] Despite the fact that none of these physicians concluded that Plaintiff must be isolated from other coworkers or the

---

[31] R. 414.

[32] R. 22-23, 412-413.

[33] R. 414.

[34] R. 235.

public, the ALJ, in an abundance of caution, included in his hypothetical to the VE that Plaintiff requires no direct contact with the public.

The ALJ also considered the opinions of one-time examiners, Drs. Lovett and Cerra, but discounted both of their opinions.[35] Although Plaintiff reported to Dr. Lovett that she suffered from auditory hallucinations, including voices and loud music, the ALJ discounted this self-reported condition based upon the fact that "a review of her medical treatment history with treating mental health personnel shows that she never reported that in the past." Plaintiff was seen approximately 15 times by a licensed social worker and "never reported that she experienced auditory, or any other type, of hallucinations."[36]   Additionally, Plaintiff never reported any type of hallucination to Dr. Cerra at her examination with him only one month after reporting these hallucinations to Dr. Lovett.

The ALJ gave little weight to the opinion of Dr. Cerra because, although Dr. Cerra opined that Plaintiff is incapable of gainful employment given the severity of her symptoms, the ALJ found that Dr. Cerra failed to point to specific limitations that would prevent Plaintiff from working. The ALJ noted that Dr. Cerra "did not report severe limitations to her attention and concentration or severe limitations of her ability to respond appropriately to others," and Dr. Cerra found that Plaintiff behaved appropriately and cooperatively during the evaluation.[37]

---

[35] R. 20-21.

[36] R. 20.

[37] Id.

Finally, the ALJ discounted the opinion of Dr. Lovett because it was internally inconsistent.[38] For example, while Dr. Lovett noted in his report marked deficits in attention and concentration this finding is inconsistent with the results of Plaintiff's MMPI-2, which did not evidence any deficits in attention.[39] Additionally, Dr. Lovett's findings regarding Plaintiff's limitations in concentration were inconsistent with those of Drs. Bojarski and Cerra, who found that Plaintiff had no more than moderate limitations in concentration and could understand and read simple instructions.

In sum, the ALJ presented hypothetical questions to the VE that included limitations consistent with Plaintiff's RFC, as determined by the ALJ.  Accordingly, there were no deficiencies in the hypothetical questions posed to the VE and, therefore, the ALJ did not commit error in finding that Plaintiff was not disabled.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED.**

**IN CHAMBERS** in Ocala, Florida, on September 19, 2007.

GARY R. JONES
United States Magistrate Judge

Copies to:

The Honorable Wm. Terrell Hodges
Senior United States District Judge

Counsel of Record

---

[38] 20 C.F.R. § 404.1527(c)(2), (d); Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir.1991).

[39] R. 373.

13